# La Rue Declaration
# Ex. D

# NEW YORK POST

## NYC'S RIGGED 'REFORMS'

By JAY GOLUB



CapitalOne

Choose
No Hassle Banking
for your financial
wants and needs.

Roll over to learn more.
Credit Cards
Auto Loans
Direct Banking
Healthcare Finance
Home Loans
Small Business

CapitalOne.com

February 22, 2007 -- CITY Council Speaker Chris tine Quinn has announced that, "for now," she's not taking campaign donattions from "big time" lobbyists. Her aides are sending back some checks, even telling certain people that they're no longer welcome at her fund-raisers.

With Gov. Spitzer having put ethics at the forefront of local political debate, Quinn's move seems pretty smart. But don't expect her to *really* change the culture of City Hall - by, say, proposing a ban on *all* special-interest contributions.

That would infuriate her members - most of whom are counting on millions from special-interest groups for their future races.

But the hypocrisy goes further. For a decade or more, the Campaign Finance Board has asked the council to pass such a ban. Instead, in 1998, the Democrat-dominated council banned *some* special-interest contributions - but only *corporate* ones, which favor Republicans. Donations from (Democrat-leaning) labor unions and from lobbyists (who naturally focus on the power-wielding majority, which is also the Democrats) remain kosher.

The significant support Rudy Giuliani received from businesses and corporations helped him beat Mayor David Dinkins in 1993. That won't happen again, thanks to the City Council's "campaign reform."

Sure, Mike Bloomberg outspent every special-interest group for the last two election cycles, allowing him to beat union-backed Democrats. But even New York doesn't have that many billionaires.

Otherwise, this defunding of Republicans has worked pretty well. In a city that's elected GOP mayors for the last 16 years, the 51-seat council now has just three Republicans.

Even that's not the whole story: Democrats suffer, too, if they don't please the unions. Once big labor gets behind a candidate, its support invariably makes that candidate the frontrunner - and, with no other major funding options available, victory in the Democratic primary becomes a forgone conclusion.

Even the Campaign Finance Board is often blind to the inequities: It gives unions a pass when examining the corrupting influence of campaign gifts.

Look at the CFB's latest report on contributions from "entities that do business with the city." Now, many unions depend *solely* on government spending for their existence - yet the report doesn't even cover the hundreds of thousands they give to campaigns to buy influence at City Hall.

Why did unions get left out, I asked the board's spokesperson. The answer: "They weren't part of the data set used." Well, why not? "They just weren't."

The injustice is made worse by the city's generous campaign-finance system, which matches each "private" dollars with $4 in taxpayer funds. No, it doesn't match the union cash *directly* - but money is pretty easy to "wash." A $2,750 gift from a union will enable a candidate to hire a top fund-raising consultant or to throw a high-profile campaign event - and so raise at least $2,750 from "private" individuals. Then *that* money gets matched with $11,000 of public funds.

It's no wonder that of the $24 million given out in public funds in 2005, an amazing $22 million went to Democrats.

All this makes it nearly impossible for anyone who can't self-finance his campaign to be competitive in any race, from City Council to mayor.

In the end, the result of the 1998 "reforms" is a council full of pawns of organized labor - and an election system that is completely non-competitive, with incumbents and union-supported candidates winning every time. This is demonstrated by the fact that of the 60 primary and general election races an incumbent had to face in 2005, only one race was lost, and that was the scandal-plagued Allen Jennings race.

The racket could go statewide. Gov. Spitzer, in his State of the State Address, talked of bringing a similar public-financing program to elections in all of New York. This makes correcting the errors of 1998 more important than ever.

So, if Speaker Quinn really wants to earn the reformer stamp, she'll need to produce something like "equal treatment of special interests." Anything else is just posturing.

*Jay Golub is executive director of the Gotham Legal Foundation. A candidate for public advocate in 2005, he has participated in the city Campaign Finance Program since 2001.*

Home

NEW YORK POST is a registered trademark of NYP Holdings, Inc. NYPOST.COM, NYPOSTONLINE.COM, and
NEWYORKPOST.COM
are trademarks of NYP Holdings, Inc.
Copyright 2008 NYP Holdings, Inc. All rights reserved.

# La Rue Declaration
# Ex. E

The New York Times                                    

June 28, 2007

# New Campaign Finance Rules Skip Unions

By RAY RIVERA

The new law would crack down on donations from lobbyists, strictly limit contributions from contractors who do business with the city, and allow developers to give only a fraction of what they once could.

But there is one group that would be untouched by the major overhaul of the campaign finance law approved by the City Council yesterday: the city's powerful labor unions.

The unions, which have given millions to city candidates and provide critical backing in Council races, were excluded from the bill, which is expected to be signed into law by the mayor. The bill would go into effect over staggered periods as the city builds the needed databases to track people doing business with the city.

The changes have received broad support from government watchdog groups, who say the new campaign finance law will be among the most stringent in the country, sharply limiting influence and the appearance of influence of special-interest money on government policy.

Excluding labor groups from the restrictions illustrates the considerable strength unions retain in New York City politics, at a time when union power is waning elsewhere in the country. The new restrictions, political analysts say, will only magnify their power.

The City Council speaker, Christine C. Quinn, the daughter of a retired union electrician who was first elected in 1999, has received a total of nearly $70,000 in union contributions. One of her top aides, Maura Keaney, is the former political director for Unite Here, which represents hotel, restaurant and apparel workers.

Ms. Quinn has repeatedly drawn a distinction between a union negotiating with the city for better pay and benefits, and developers and corporations vying for lucrative land deals or government contracts.

"The situation here is to require that everyone gets treated the same way," she said yesterday. "A union or a PAC can give one contribution, whatever the maximum is for the office in question. Someone who did business with the City of New York prior to this could have every person in the business give a contribution of the maximum level allowed to that office. So I think this in fact much more levels the playing field."

If a union does get involved in a land-use application or a contract that is not labor related, she said, it would be bound by the same contribution restrictions.

Only four council members voted against the bill, citing concerns that the contribution limits would give an unfair advantage to wealthy candidates while restricting the speech of certain groups.

"The fact that we're leaving out interest groups — unions in this particular case — at the expense of the rest of

the city is questionable at best," Councilman Vincent Ignizio, a Staten Island Republican who voted against the bill. "The government is determining which speech ought to be heard loudest."

Under the bill, people who do business with the city could donate a maximum of $250 to City Council candidates and $400 to mayoral candidates. That cap would apply to lobbyists, developers, people with land-use and zoning applications pending before the city, and those with city contracts worth $100,000 or more. Union limits would remain the same as ordinary contributors at $2,750 in Council races and $4,950 in mayoral races.

A review of campaign finance contributions shows that unions give far less to candidates than do lobbyists, contractors and other groups who would be bound by the bill's "pay-to-play" restrictions.

In the 2001 and 2005 elections, for example, groups defined as "doing business" with the city that would be bound by the new restrictions gave a total of about $25 million to citywide candidates. Unions and labor-related political action committees gave about 16 percent of that total, or about $4.1 million.

Under the new restrictions, contributions from groups doing business with the city would be reduced to 10 percent of their present levels, amplifying the effect of union dollars.

That increase in monetary influence would come on top of the already considerable influence the unions have in manpower, get-out-the-vote efforts and endorsements.

"In comparison, the unions don't give that much money, so this kind of equalizes their power — that's No. 1," said Hank Sheinkopf, a longtime Democratic consultant. "No. 2, they're still powerful in that they can bring resources to bear in particular districts and in particular campaigns."

Evidence of that power can be seen in how the bill was put together. Mayor Michael R. Bloomberg had been calling for stricter pay-to-play restrictions since his first term, including limits to union giving. When negotiations on the current bill began late last year, there was little or no talk of putting restrictions on unions, according to people close to the negotiations.

Councilman Simcha Felder, a Democrat of Brooklyn and chairman of the Council's Governmental Operations Committee, was one of the lead negotiators on the Council side. He said the bill would never have passed without the union exclusion.

But even with the union exception, Mr. Felder praised the bill.

"I think we have to be practical," he said. "I think that this deal with all the restrictions is a very significant improvement over what exists."

The new restrictions come as more than two-thirds of the 51 council members will be forced out of office in 2009 by term limits, including Ms. Quinn.

Ms. Quinn is frequently mentioned as a possible mayoral candidate, and some analysts and critics of the bill said that now would be a bad time for her to anger the unions. Her chief rivals for the office, City Comptroller William C. Thompson Jr. and Representative Anthony D. Weiner, Democrat of Queens, also enjoy broad

union support. Mr. Thompson has received nearly $170,000 in union contributions since 2001, more than any other current city office holder.

Ms. Keaney, the speaker's deputy chief of staff, said the union exception has nothing to do with Ms. Quinn's strong ties to labor.

"She has a strong relationship," Ms. Keaney said, "but you could also say that she has strong relationships with the business community and developers."

Councilman Bill de Blasio, who also has strong ties to labor and has received about $153,000 from unions since 2001, supported the exclusion.

"There's no question about the business community's ability to defend itself," Mr. de Blasio said before yesterday's vote. "The only balance when it comes to working people's interests is labor, and anyone who argues that we should ban labor contributions is basically ceding the playing field to businesses and the wealthy."

Critics of the bill, mainly lobbyists and developers most affected by it, say placing restrictions on some groups but not on unions is tantamount to discrimination. Some have threatened a lawsuit challenging it on constitutional grounds.

Critics also say the restrictions will give more power not only to the unions but also to the very rich who can finance their own campaigns.

"Communicating with the electorate is very expensive these days," said Norman Adler, president of Bolton-St. Johns, the city's second-largest lobbying firm in terms of revenue last year. "My view is it's anti-democratic."

*Diane Cardwell, Michael M. Grynbaum and Jo Craven McGinty contributed reporting.*

Copyright 2007 The New York Times Company

Privacy Policy  |  Search  |  Corrections  |  RSS  |  First Look  |  Help  |  Contact Us  |  Work for Us  |  Site Map