# La Rue Declaration
# Ex. J



Section: New York > Printer-Friendly Version

# City Blacklist Limits Giving by 12,000

Bollinger, Thain, LeClerc 'Get Their Megaphones Taken Away'

By JOSEPH GOLDSTEIN, Staff Reporter of the Sun | August 14, 2008
http://www.nysun.com/new-york/city-blacklist-limits-giving-by-12000/83868/

A LITTLE-KNOWN BLACKLIST, STILL BEING COMPILED UNDER THE TERMS OF THE CITY'S NEW campaign finance law, is threatening to block thousands of New York's wealthiest and most distinguished citizens from participating fully in the political life of the city.

The list already carries about 12,000 names, including civic leaders with positions at museums, universities, hospitals, law firms, nonprofits, churches, yeshivas, and banks. Those on it are forbidden from contributing to the city's political campaigns in the amounts other citizens are permitted.

View and search the city's database of lobbyists.
View and search the city's database of people with "business dealings" with the city.

Among those on the list are the president of Columbia University, Lee Bollinger; the president of Lincoln Center, Reynold Levy; the CEO of Merrill Lynch, John Thain, and the president of the Metropolitan Museum of Art, Emily Rafferty. Also listed among many others are the president of the New York Public Library, Paul LeClerc, and the director of the New York Civil Liberties Union, Donna Lieberman.

The city's regulations seem to be heading to where "only the people involved in the most pedestrian concerns could participate in government," a lawyer who is challenging the list in federal court, James Bopp, said in a telephone interview.

The city is drawing up the list to enforce a 2007 law that limits campaign contributions from lobbyists as well as those who have "business dealings" with the city. The aim of the law was to prevent corruption in city politics, or at least the appearance of corruption.

Court documents in the lawsuit have not yet turned up any evidence that campaign contributions from those on the list had been linked to corruption in the past.

"Part of the public perception is that the giving of large contributions could be a way to curry favor with politicians," the executive director of the city's Campaign Finance Board, Amy Loprest, said in a telephone interview. "Whether that perception is real, the whole purpose of the law is to improve the public's faith in the electoral system."

But Mr. Bopp said that the list simply "scooped up tens of thousands of people" without good reason.

"It's pretty troubling that the government is blacklisting people and identifying them as particularly risky threats of corruption when they've done nothing," Mr. Bopp, who has won cases challenging campaign finance regulations before the U.S. Supreme Court, said in a phone interview. "They have been presumed guilty instead of innocent just because of their prominence in the community," Mr. Bopp said of the people on the list.

The length of the list is attributable to the law's broad definition of what it means to have "business dealings" with the city. The list does not only include lobbyists or businessmen who count the city as a customer, such as, say, the owner of a gravel company. Any nonprofit that receives city help for operating costs, such as the Metropolitan Museum of Art or the American Museum of Natural History, is also considered to have "business dealings" with the city, and members of their top management are placed on the list.

In all, corporate officers from 1,612 different nonprofit organizations are listed as doing business with the city. Several are churches and synagogues that provide city-funded day care, counseling, or other services. For instance, the dean of the Cathedral Church of St. John the Divine, the Very Reverend James Kowalski, is on the list.

The city is currently in the process of adding to the list the management of companies or institutions that have a zoning variance request before the city. Also being added are corporate officials whose companies are receiving economic development packages that include benefits from the city. When the list is finished, which is expected to occur in December, it could also include the publisher of the New York Times, Arthur Sulzberger Jr., whose paper had not, as of a year ago, used up the sales tax credit it received from the city for building a new headquarters.

"Is it over-inclusive? I would say 'no,'" a senior city lawyer who is defending the law against Mr. Bopp's lawsuit, Jonathan Pines, said of the list. "There are a tremendous number of ways in which an individual or entity can be engaged in business dealings with the city. And it was an enormous undertaking to come up with a definition."

Limits on campaign contributions have long been a contentious issue. Critics of the limits say the donations are a form of speech protected by the First Amendment, while proponents say the limits are needed to protect against corruption and favoritism.

In New York, campaign contribution limits generally restrict people to contributing up to $4,950 to a mayoral candidate and $2,750 to a City Council candidate. Under the new law, those on the list are now limited to giving less than 10% that amount: up to $400 to mayoral candidates and $250 to council candidates. The law is in effect for the 2009 election and will likely result in campaigns having to return contributions.

A second provision of New York's campaign finance limits prevents the city from matching any contributions by people on the list. Campaign contributions by other citizens, up to the first $175, are matched by six times that amount by city funds. The effect is that those not on the blacklist can give $2,750 to a council candidate, bolstered by $1,050 in matching funds, for a total of $3,800, while

those on the blacklist can only give up to $250.

It is the ban against matching the donations by people on the list that is most vulnerable to being struck down by a court, some legal experts say.

"That strikes me as utterly irrational and has got to go," a law professor at New York University, Burt Neuborne, said. "They're essentially saying that if you do business with the city the value of your money should be lessened. Those people get their megaphones taken away while everyone else gets government amplification."

Mr. Neuborne also said that some might consider membership on the list to be a perk: It presents a handy excuse against campaign solicitations.