UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TOM OGNIBENE et al.,

        Plaintiffs,

    -v-                                                      No. 08-CV-1335-LTS-FM

S.J. JOSEPH P. PARKES et al.,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Tom Ognibene and his co-plaintiffs[1] (collectively, "Plaintiffs") filed suit in February 2008 pursuant to 42 U.S.C. § 1983 against the City of New York, asserting twenty claims that challenged the constitutionality of provisions of the New York City Administrative Code embodying the City's Campaign Finance Act (the "CFA"). After stipulating to an entry of judgment and partial summary judgment, Plaintiffs prevailed on two of the twenty counts. Moving pursuant to 42 U.S.C. § 1988, Plaintiffs now seek to recover $232,814.25 in attorneys' fees and $11,916.80 in costs and expenses. The Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. § 1331. The Court has considered carefully all of the parties' submissions and arguments. For the following reasons, Plaintiffs' motion is granted in part.

---

[1]      The other plaintiffs in this case are: Yvette Velasquez Bennet, Viviana Vazquez-Hernandez, Robert Perez, Fran Reiter, Sheila Andersen-Ricci, Martina Franca Associates, LLC, Reiter/Begun Associates, LLC, Denis Gittens, Oscar Perez, Michele Ruso, The Kings County Committee of the New York State Conservative Party, The New York State Conversative Party, Martin Dilan, Marlene Tapper, and Leroy Comrie.

BACKGROUND

In April 2008, Plaintiffs moved for preliminary injunctive relief on six of their twenty claims, challenging the "Pay-to-Play" provisions of the CFA. (Decl. of Jon Pines ¶ 5.) Defendants subsequently interposed cross-motions for summary judgment on those six claims. (Id. at ¶ 7.) On February 6, 2009, the Court granted summary judgment in favor of Defendants, denying Plaintiffs' motion for preliminary injunctive relief and dismissing six corresponding counts of the complaint. (Id.) Proceedings on all of the remaining counts were then stayed pending an appeal of the summary judgment decision to the Second Circuit and Supreme Court decisions in two campaign finance cases (Citizens United v. FEC, 558 U.S. 310 (2010) and Arizona Free Enterprise Club's Freedom PAC v. Bennett, 131 S. Ct. 2806 (2011) ("Bennett")). (Pls.' Mem. Supp. 3). On appeal, the Court of Appeals for the Second Circuit affirmed the dismissal of all six counts. Ognibene v. Parkes, 671 F.3d 174 (2d Cir. 2012).

In June 2011, the Supreme Court issued its decision in Bennett, holding certain types of matching funds provisions unconstitutional. Bennett, 131 S. Ct. at 2828. In response to Bennett, Defendants agreed to stipulate to the entry of a partial judgment on one count related to the "Rescue Fund" provisions of the CFA. (Decl. of Jon Pines ¶ 12). The parties agreed to litigate the remaining counts, related to the "Sure Winner" and "Expenditure Limit Relief" provisions, by cross-motions for summary judgment. (Id. at ¶ 14.)

On April 4, 2013, the Court granted partial summary judgment in favor of Plaintiffs on two counts and denied the motion for summary judgment in all other respects. The Court also granted summary judgment in favor of Defendants on two other counts. Plaintiffs thereafter agreed to stipulate to the dismissal of all other remaining counts. (Id. at ¶ 20.)

DISCUSSION

Reasonable Attorneys' Fees

Pursuant to 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C.S. § 1988(b) (LexisNexis 2013).  In determining what constitutes a reasonable fee award, courts first calculate the "lodestar figure," which represents the presumptively reasonable fee.  Perdue v. Kenny A. Ex rel. Winn, 559 U.S. 542, 551-52 (2010). The lodestar figure is computed by "multiplying a reasonable hourly rate by the number of reasonably expended hours."  Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011).  Accordingly, the Court must determine (1) what hourly rate is reasonable, and (2) what number of hours expended is reasonable in light of Plaintiffs' degree of success.  Barbour v. City of White Plains, No. 07 Civ. 3014, 2013 WL 5526234, at *3 (S.D.N.Y. 2013).

*Reasonable Hourly Rate*

"To determine the reasonable hourly rate for each attorney, courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 1373118, at *2 (S.D.N.Y. 2007) (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  The burden is on the movant to show "by satisfactory evidence–in addition to the attorney's own affidavits–that the requested hourly rates are the prevailing market rates."  Id. at *3 (quotations omitted).

"A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate."  Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003).  The Bopp Law Firm ("Bopp") is an Indiana-based firm that specializes

"in constitutional and civil rights litigation in various state and federal courts, including election law cases."  (Decl. of James Bopp, Jr. ¶ ).  Bopp's practice is to request the "[prevailing] market rate of the community in which the fee petition is filed."  (Id. ¶ 9).  Here, Bopp requests hourly rates ranging from $250 to $525 based on the particular attorney's experience level.  These requests are supported by declarations and affidavits attesting that Bopp's rates are consistent with this District's prevailing market rates for the type of work performed.  (See Decl. of Charles Moerdler ¶¶ 4-7; Decl. of Steven Mintz ¶¶ 3-6.)  Over the last ten years, courts in this District have awarded rates to experienced civil rights attorneys in the range of $250 to $600 and to associates in the range of $200 to $350, "with average rates increasing over time."  Greene v. City of New York, No. 12 Civ. 6427, WL 5797121, at *3 (reviewing Southern District cases to determine the "prevailing market rate").  Bopp's hourly rates are thus consistent with reasonable hourly rates for comparable work in this District.

       Defendants argue that awarding Southern District rates to Bopp, an Indiana-based law firm, would lead to an unjustifiable windfall.  See Arbor Hill Concerned Citizens Ass'n v. County of Albany, 369 F.3d 91 (2d Cir. 2003) (courts should not award fees commensurate with the forum rate if this rate would lead to a windfall).  Defendants propose that the Court adopt what Defendants characterize as a "rough justice" approach, awarding Plaintiffs a blended hourly rate of $350.  (Defs.' Mem. Opp'n 6-8.)

       While it is true that Bopp is an Indiana-based firm, it is a specialized law firm that customarily practices in forums across the country and regularly receives prevailing market rates in higher-paying forums.  See, e.g., Lux v. Judd, 868 F. Supp. 2d 519, 532 (E.D. Va. 2012); Thalheimer v. City of San Diego, No. 09 Civ. 2862, 2012 WL 1463635, at *8 (S.D. Cal. Apr. 26, 2012).  Furthermore, averaging the rates of associates and partners of a law firm with varying

degrees of experience to produce a "blended" hourly rate for the sake of expedience is unnecessary here and, given Plaintiffs' submission of time records showing each attorney's work and hourly rates, would be inconsistent with this District's practice of considering the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation." Heng Chan, 2007 WL 1373118 at *2. Therefore, the Court rejects Defendant's proposal of a blended hourly rate and will apply Bopp's requested hourly rates.

Davidoff, Hutcher & Citron ("Davidoff"), serving as Plaintiffs' local counsel in New York City, New York, requests hourly rates of $525 and $575 for partners with over twenty years of experience. While the requested rates fall on the higher end of the spectrum deemed reasonable in this District, the Davidoff partners practice in this forum and have a great deal of experience. These factors serve as appropriate bases for accepting the requested rates as reasonable.

*Number of hours expended and the degree of success*

A fee award may only compensate attorneys for hours that are "reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)." To that end, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. at 434. The Court must also consider the degree of success obtained. This is the most critical factor in a district court's determination of what constitutes a reasonable attorney's fee. Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 152 (2d. Cir. 2008) (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992)). The fee award should reflect the level of success attained by the prevailing party. Hensley, 461 U.S. at 438. While there is no precise formula or rule to guide this inquiry,"[t]he district court may attempt to identify specific hours that should be eliminated or it may reduce the award to

account for the limited success." Id. at 437.  The district court "necessarily has the discretion in making this equitable judgment."  Id.

In accordance with the Hensley framework, Bopp attempted to exclude unnecessary hours and expenses as well as time spent in pursuit of unsuccessful claims, resulting in a reduction from 1,757 total billable hours to 544.45 hours.  (Pls.' Mem. Supp. 15.)  Defendants, however, assert that the reduced figure number is still unreasonable.  Citing the Hensley standard, Defendants urge the Court to treat this litigation as two separate lawsuits: litigation on the Pay-to-Play provisions and the post-Bennett litigation.  From this perspective, Bopp should only be awarded hours in pursuit of their two meritorious claims, which, Defendants contend, only required simple drafting of relevant portions of a complaint, consultation with opposing counsel regarding the Bennett decision, and simple cross-motion practice for summary judgment on the remaining issues.  Thus, Defendants conclude that Bopp could not have reasonably expended more than a total of 142 hours. (Defs.' Mem. Opp'n 16-17.)  Defendants' approach, which is premised on hypothetical separate litigation, is overly harsh.  Plaintiffs were unsuccessful in pressing the bulk of their claims, but the Court finds complete exclusion of all expenses relating to the initiation of the lawsuit unreasonable.

Based on the Court's assessment of the billing statement (Pls.' Ex. C), Bopp expended 174.8 hours on tasks related to complaint drafting and filing.  Given the scope of the complaint, the Court finds this number of hours reasonable and will compensate Plaintiffs accordingly, since a complaint is the starting point of any litigation and there is no contention that the claims were frivolous or entirely unrelated to the subject mater of the action.  Therefore, Plaintiffs are awarded fees for all of the hours requested for the pleading phase of the litigation, totaling $60,155.50.

Next, Plaintiffs' attorneys expended 159.2 hours on tasks related to discovery and scheduling. The bulk of these tasks revolved around preparing and drafting the declarations of the Plaintiffs, which were ultimately submitted in connection with the preliminary injunction hearing on which Plaintiffs were unsuccessful. (See id. at 62-85.) These declarations were primarily prepared in furtherance of the unsuccessful claims related to the "Pay-to-Play" provisions, and thus, time spent on these tasks is non-compensable. The Court, exercising its discretion, reduces the hours expended in the discovery and scheduling phase by 90%, awarding Plaintiffs $4,593 for this phase.

Both parties agree that all hours expended in pursuit of the preliminary injunction motion, as well as the appeal from the denial of that motion, are to be excluded. The time related to Plaintiffs' applications to stay the proceedings is reasonably compensable, as it was expended during critical procedural phases that contributed to Plaintiffs' successful claims. To that end, Bopp is awarded fees for 35.2 hours, totaling $9,114. Similarly, all time expended by Plaintiffs in analyzing the Bennett decision and obtaining a stipulated entry of judgment is also reasonable. Consequently, Bopp is entitled to fees for an additional 14.9 hours, totaling $4,835.

Bopp also expended 119.9 hours in connection with cross-motion practice for summary judgment on the four counts related to the Rescue Fund provisions. While this time was spent in pursuit of a successful claim, awarding all of the hours would be unreasonable because Plaintiffs were only partially successful. The Court only granted summary judgment in favor of Plaintiffs on one aspect of one count. In accordance with Hensley, and considering Plaintiff's partial success on the cross-motions, the Court reduces the number of hours expended on the cross-motions by 40%. Therefore, for the cross-motion phase, Bopp's time is reduced to 72 hours, entitling Bopp to $22,707.30.

Lastly, Bopp requests fees for an additional 88.6 hours, totaling $29,216.50, for time expended in pursuit of this fee award motion.  A prevailing party has the right to recover reasonable attorneys' fees and expenses incurred in preparing a successful motion for attorneys' fees.  Greene, 2013 WL 5797121 at *2 (citing Short v. Manhattan Apartments, Inc., No. 11 Civ. 5989, 2013 WL 2477266, at *8 (S.D.N.Y. Jun. 10, 2013)).  Bopp has successfully moved for attorneys' fees and, given that the amount of time expended is reasonably consistent with the nature and complexity of this motion, Plaintiffs are entitled to recover these fees incurred in preparing and maintaining this motion.

In total, the Court finds that Bopp reasonably expended 449.32 hours.  Plaintiffs are, thus, awarded $130,621.30.

Davidoff provided a clear billing statement that only included entries directly linked to Plaintiff's successful claims.  The Court first awards fees for all 16.5 hours, totaling $8,592.50, expended on tasks related to obtaining Defendant's stipulated entry of judgment.  Next, Davidoff expended 37.25 hours on summary judgment motion practice.  Based on the limited success of the cross-motions, the Court finds it reasonable to reduce Davidoff's requested hours by 40% with respect to the summary judgment cross-motion practice phase.  Thus, Davidoff is awarded fees for 22.35 hours, totaling $11,785.80.  Lastly, Davidoff has requested 11 additional hours in fees, totaling $4,317.50, for time spent preparing a pro hac vice motion and communicating with Bopp.  The Court also grants compensation for these reasonable hours.

In total, this Court concludes that Davidoff has reasonably expended 49.85 hours and that Plaintiffs are entitled to $24,695.80 in attorneys' fees with respect to Davidoff's services.

Reasonable Expenses and Costs

It is well settled that attorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients. Reichman v. Bonsignore, Brignati & Mazzota P.C., 818 F.2d 278, 283 (2d. Cir. 1987). "The rationale for this rule is that attorney[s'] fees include expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" Greene, 2013 WL 5797121 at *6. Expenses must also be in the advancement of a specific claim and not be so general that they qualify as overhead or office expenses. Marshal v. State of N.Y. Div. of State Police, 31 F. Supp. 2d 100, 110 (N.D.N.Y. 1998).

Bopp requests $10,894.69. This amount is comprised of expenses for travel, research, filing court documents, and photocopying costs. Bopp represents that it has undertaken an aggressive review of its expenses, resulting in a $19,017 reduction from its actual expenses. (Pls.' Mem. Supp. 15). Defendants argue that Bopp's reduced amount is still unreasonable because (1) Bopp's expense entries are too vague and are not connected to the advancement of specific claims and (2) Bopp's travel expenses and deposition delivery costs are unrelated to Plaintiffs' successful claims. (Defs.' Mem. Opp'n 19.)

After examining Bopp's billing statements as well as the parties' supporting briefs, this Court is persuaded that the majority of the expenses are reasonable. The expense statement is an authenticated and contemporaneous record that sufficiently lists reasonable out-of-pocket expenses. However, not all of Bopp's expenses are reasonable consistent with the compensation principles outlined above. The Court will not award Bopp's requested $3,582.26 for "Travel expenses for defending depositions in NYC," because this expense was incurred in

pursuit of depositions for Plaintiff declarations in aid of the "Pay-to-Play" phase of the litigation. Therefore, the Court reduces Bopp's total compensable expenses to $7,311.74.

As for local counsel, Davidoff requests $821.40, divided into $421.40 for duplicating charges and $400.00 for court or government fees. These expenses are reasonable and the request is therefore granted.

Defendants' Request for Costs

Another issue before the Court is whether Defendants can recover costs for a discrete portion of the litigation on which they were successful when the Plaintiffs are considered the "prevailing party" for attorneys' fees under § 1988. The issue is an unsettled one in this and other circuits. See Nat'l Org. for Marriage v. McKee, No. 09 Civ.538, 2013 WL 140620 (D. Me. Jan. 11, 2013) (reviewing case law on the issue of whether defendants can receive a costs award under rule 54(d) as a "prevailing party" where plaintiffs are considered the "prevailing party" under §1988 and awarding defendant costs unrelated to plaintiffs' successsful claim) ("Nat'l Org").

While the Second Circuit has observed in dicta in a civil rights case that, "[i]n general, a litigant who is a prevailing party for purposes of attorneys' fees is also the prevailing party for purposes of costs," Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101 (2d. Cir. 2006), at least one district court in the Circuit has found a split costs award appropriate. In E.E.O.C. v. Colgate-Palmolive Co., 617 F. Supp. 843 (S.D.N.Y. 1985), the court held that "given the fact that this was an action based on numerous discrete claims and that plaintiff prevailed on only a small number of those claims, the costs in this action should be allocated between the two parties." Id. at 844. "The decision to award costs pursuant to Rule 54(d)(1) and Local Rule 54.1

'rests [,in any event,] within the sound discretion of the district court.'" <u>Dattner</u>, 458 F.3d 98, 100 (citation omitted).

Here, Defendants seek to recover well-documented expenses that are exclusively linked to the successful litigation of the "Pay-to-Play" phase.  (<u>See</u> Decl. of Jon Pines Ex. E.) Given Plaintiffs' limited success in this action and the reasonable and limited nature of Defendants' request, the Court awards Defendants' costs requested in the amount of $3,382.72.

## CONCLUSION

For the foregoing reasons, the Court awards Plaintiffs attorneys' fees and costs in the following amounts: (1) Bopp Law Firm is awarded $130,621.30 in attorneys' fees and $7,311.74 in costs and expenses; and (2) Davidoff, Hutcher & Citron is awarded $24,695.80 in attorneys' fees and $821.40 in expenses.  In total, Plaintiffs are awarded $163,450.24.  Plaintiffs must pay Defendants' costs in the amount of $3,382.72.

This Memorandum Order resolves docket entry number 189.  The Clerk of Court is requested to enter judgment in accordance with the Court's April 4, 2013 Opinion and Order (docet entry no. 172), the August 12, 2013 Stipulation and Order (docket entry no. 182), and this Memorandum Order.

SO ORDERED.

Dated: New York, New York
July 22, 2014

/s/ Laura Taylor Swain  
LAURA TAYLOR SWAIN  
United States District Judge