08-CV-1335 (LTS) (FM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOM OGNIBENE, *et al.*,

Plaintiffs,

- against -

JOSEPH P. PARKES, S.J.*, et al.*,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jonathan L. Pines*
*Tel:  (212) 356-2082*
*Matter No. 2008-004838*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

TOM OGNIBENE, *et al.*,

                                Plaintiffs,

                - against -

JOSEPH P. PARKES, S.J.*, et al.*,

                             Defendants.

---------------------------------------------------------------------- x

                              08-CV-1335 (LTS) (FM)
                              (Electronically Filed)

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

### Preliminary Statement

        Apparently unable to take "yes" for an answer, Plaintiffs in the above-captioned action, having eked out a de minimis win on part of a claim litigated as an afterthought[1] (as well as on another claim immediately settled by short-form stipulation and order after a handful of attorney-hours), now protest this Court's extraordinarily generous award of more than $137,000 in fees and costs.  Plaintiffs' pending motion rests on their assertion  that, their counsel having applied their own deductions for their extremely modest success on the merits, the Court is somehow estopped from applying further deductions in the exercise of its discretion, based upon its own familiarity with the litigation.  In essence, Plaintiffs appear to argue that any judicial disagreement with the adequacy of Plaintiffs' self-imposed reductions constitutes an impermissible double reduction.

---

[1] *See, e.g., Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997) (96% fee reduction for limited degree of success, including successful claim "so insignificant that it was not even pursued until five years after this litigation was commenced").

In opposing Plaintiffs' (counsel's) application for additional taxpayer funding of its litigation efforts in an amount utterly disproportional to its success in this specific litigation, Defendants submit that neither logic nor legal precedent supports Plaintiffs' arguments.

## STATEMENT OF FACTS

Defendants will assume the Court's familiarity with the relevant facts.   The following factual statement pertains only to the Court's Memorandum Order, dated July 22, 2014 ("Order"), and Plaintiffs' asserted bases for additional money.

### A.     The Hensley v. Eckerhart Standard

As discussed in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees, dated November 27, 2013 ("Defs' Mem.") at 9-10, the Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424 (1981), held that when successful and unsuccessful claims are discrete and separable, "no fee may be awarded for services on the unsuccessful claims." *Id*. at 435.  The Court emphasized that, in such circumstances, the use of a bifurcated model of litigation was mandatory:  "The congressional intent to limit awards to prevailing parties *requires* that these unrelated claims be treated as if they had been raised in separate lawsuits…." *Id*. (emphasis added).

Plaintiffs, emboldened by this Court's characterization of Defendants' bifurcated analysis as "overly harsh," Order at 6, now seek to exploit the Court's apparent willingness to depart from a mandatory bifurcation analysis, highlighting exactly why bifurcation is both appropriate, and essential, in this case.

### B.     Complaint Drafting and Filing

This Court determined that, "based upon [its] assessment of the billing statement (Pls.' Ex. C), Bopp expended 174.8 hours on tasks related to complaint drafting and filing."

Order at 6.  The Court found "this number of hours reasonable … since a complaint is the starting point of any litigation and there is no contention that the claims were frivolous or entirely unrelated to the subject matter of the action."  *Id*.  The Court concluded that Plaintiffs should be awarded "all of the hours *requested* for the pleading phase of the litigation," *id*. (emphasis added), and awarded Plaintiffs' fees corresponding to those 174.8 hours.

Sensing an opening, Plaintiffs now seek to use the Court's analysis to recover more money than even they thought themselves entitled to.  According to Plaintiffs' own explanation, they amassed a remarkable 412.9 billable hours for complaint drafting and filing – constituting fully 11.8 attorney-weeks (at 35 hours/week), or nearly a quarter of a year of an attorney's time, simply for drafting and filing the complaint.  Plaintiffs' Memorandum Supporting Motion for Reconsideration, dated August 7, 2014 ("Pls' Mem.") at 5.  By their own analysis, after reductions of 33.6 hours in "excessive, redundant, or otherwise unnecessary" effort (*id*. at 4) and 202.9 hours in "billing judgment" (*i.e.*, for limited success), Plaintiffs sought compensation for 176.4 hours attributable to this phase of the litigation.  *Id*. at 5.

Now, however, Plaintiffs suggest that the Court's language "contemplates awarding compensation for drafting and filing a complaint raising more than two claims – and suggests that time spent in this phase reasonably necessary to raise all of the claims should be compensated."  Pls' Mem. at 5.  In other words, Plaintiffs read the Court's analysis not only as using the *Hensley* "unitary case" analysis, but also as requiring compensation for time that even Plaintiffs excluded and/or discounted as unreasonable in their own fee application.

Defendants submit that the Court should have made clear that *Hensley* requires the use of a bifurcated analysis where, as here, claims are separable and discrete, so that

Plaintiffs had no legal basis for seeking compensation for any portion of the hours attributable to the eighteen discrete and unsuccessful claims they asserted in their amended complaint.

Alternatively, however, even if the Court applies a "unitary case" analysis, nothing in either that analysis, or the reasoning and language of the Order, precludes the application of a substantial reduction to the three months of attorney time Plaintiffs' counsel claim in drafting the pleadings in this action, resulting in a $60,155.50 award for 174.8 hours.[2] Even in "unitary cases," where successful and unsuccessful claims rely upon a common core of facts or related legal theories, the appropriate analysis may deem all hours included in the initial lodestar calculation, but it then applies a discount, and an often significant one, to that totality of hours to reflect the degree of success achieved.  *Hensley*, *supra*; *see also Kassim v. City of Schenectady*, 415 F.3d 246, 253-54 (2d Cir. 2005).

To suggest, as Plaintiffs now do, that the Court's reasoning requires not merely the inclusion of all of those hours, but their inclusion without discount for excessiveness or limited success is not merely unprincipled, but, as Plaintiffs' counsel well knows, unprecedented. *See, e.g., Kassim,* 415 F.3d at 256 (holding, in a "unitary case," that "our circuit has … clearly adopted the view … that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted

---

[2] Even that award is excessively generous:  The hourly rate derived from those numbers is $344/hour – falling well within in the mid-range of rates typically awarded to "experienced civil rights and employment law litigators in the Southern District."  *Maldonado v. La Nueva Rampa, Inc.*, 10 Civ. 8195 (LLS) (JLC), 2012 U.S. Dist. LEXIS 67058 at *46 (S.D.N.Y. 2012) (identifying a range of rates between $250 and $450 for such lawyers).  Thus, the Order finds that an *Arbor Hill* "reasonably thrifty" client would pay an "experienced civil rights litigator" for 174.8 hours – fully five weeks of his time – to draft a twenty-count complaint, where Plaintiffs ultimately prevailed on only one claim and part of a second.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007).  Their ability to persuade the Court notwithstanding, Plaintiffs' counsel's ability to convince a thrifty client, with one eye on her wallet and the other on the litigation outcome, of the reasonableness of that allocation of time seems, at best, extraordinarily unlikely.

either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory").  Plaintiffs' claim for an indeterminate and unidentified additional amount of money for the drafting and filing of the complaint should therefore be rejected.

### C.  Discovery and Scheduling

In its Order, the Court finds that "the bulk of these tasks revolved around preparing and drafting the declarations of the Plaintiffs, which were ultimately submitted in connection with the preliminary injunction hearing on which Plaintiffs were unsuccessful." Order at 7.  Noting that the declarations were "primarily prepared in furtherance of the unsuccessful claims related to the 'Pay-to-Play' provisions," the Court properly concluded that "time spent on these tasks is non-compensable."  *Id.*  In fact, not merely the bulk, but the entirety of discovery was addressed to Plaintiffs' unsuccessful Pay-to-Play challenge and thus, as the Court rightly noted, should have been non-compensable.  Nonetheless, apparently finding the "separate trial" analysis mandated by *Hensley* inapplicable, the Court awarded Plaintiffs $4,593, or 10% of their requested hours, for work that even Plaintiffs must concede had no bearing whatsoever on the limited, discrete claims on which they partially prevailed, years after they litigated and lost their Pay-to-Play claims.

Because an appropriate analysis under *Hensley* would have excluded in their entirety all hours attributable to discovery and scheduling,[3] Plaintiffs' claim of an additional $5,442.85 (*see* Pls' Mem. at 7, 8) for work during the Pay-to-Play discovery and scheduling phase is utterly unwarranted.

---

[3] Presumably, "scheduling" in this context refers to deposition scheduling, as the Defendants' scheduling of all of Plaintiffs' depositions in the compressed timeframe ordered by the Court required considerable coordination with Plaintiffs' counsel.  That work, like the rest of the discovery for which Plaintiffs seek compensation, should have properly been excluded in its entirety under *Hensley*, as it related to Plaintiffs' separable and unsuccessful Pay-to-Play claims.

D.    **Miscellaneous Remaining Hours**

Finally, Plaintiffs challenge the Court's award as it relates to their application for a stay of proceedings, as well as to the Court's reduction of what Plaintiffs claim was their already-reduced fee demand for the litigation of Claims XI-XIV.  While the Order does not make the Court's analysis clear, Plaintiffs have offered no persuasive reasoning why the Court's award for work performed in this phase of the litigation constitutes error warranting an upward adjustment.  For example, Plaintiffs' counsel challenge the derived hourly rate of $259 for the stay application.  Pls' Mem. at 8 & n.9.  However, given the lack of complexity of the application, an hourly rate of $259 – again, within the range of rates this Court has deemed appropriate for "experienced civil rights" practitioners in the Southern District, *see Maldonado*, 2012 U.S. Dist. LEXIS 67058 at *46 – is manifestly reasonable and appropriate for this work, particularly given that the Court allowed "experienced" counsel a full week to prepare the altogether routine application.

Even if the Court were somehow persuaded otherwise, it might well take into consideration that the (unidentified) time the Court awarded the Bopp Firm for reviewing the *Bennett* decision when it was handed down (Order at 7) – a key Supreme Court decision in Plaintiffs' counsel's stated area of expertise – should not properly be billed either to the firm's clients or to the Defendants, but should be considered part of the Bopp Firm's overhead expenses, subsumed in the rates they claim for that expertise.  *See, e.g., Fabela v. City of Farmers Branch, Tex.*, 2013 U.S. Dist. LEXIS 82980, *21-22 (N.D. Tex. June 13, 2013) (drawing distinction between research specific to case, which is compensable for time reasonably expended, from general research in area of law, which should be reflected in attorney's hourly rate).

### E.    Additional Arguments Against Any Upward Adjustment

The Order awarded fees to Plaintiffs based upon the following hours the Court deemed "reasonable":

- 174.8 hours (5 attorney-weeks) for complaint drafting and filing (Order at 6)

- 15.9 hours for discovery and scheduling (*id.* at 7) (derived from 90% reduction of requested 159.2 hours)

- 35.2 hours (1 attorney-week) for stay application (*id.*)

- 14.9 hours for reading *Bennett* decision and negotiating stipulation of partial judgment (*id.*)

- 72 hours for cross-motion on Counts XI-XIV of the Amended Complaint (*id.*)

- 88.6 hours for "fees on fees" (*id.* at 8)[4]

Defendants respectfully submit that the above hours are, at the very least, more than reasonably generous to Plaintiffs' counsel.  As reflected in the above summary of hours, the Court found that it was reasonable for Plaintiffs' counsel to expend 174.8 hours drafting and filing the complaint, yet only 138 hours litigating its claims.  In other words, the Order concludes that it was reasonable for Plaintiffs' counsel to spend 36.8 hours – more than a week – longer to draft the complaint than to litigate it.  And that it was reasonable for counsel to spend nearly two-thirds of the time the Court deemed reasonable to litigate the case – 88.6 hours, or 64% of the reasonable litigation's 174.6 hours – to pursue their fees.

Defendants respectfully submit that, were the Court's Order reduced to a bill, Plaintiffs' counsel would be hard-pressed to find an *Arbor Hill* "reasonable," "thrifty" client

---

[4] The total of these hours – 401.4 – differs from the total of 449.32 hours for the Bopp Firm reported in the Order at 8.

"wish[ing] to pay the least amount necessary to litigate the case effectively," who would countenance hours so apportioned, so inefffectively.  *Arbor Hill*, 522 F.3d at 184.  Certainly, Defendants are unaware of any reported fee decision upholding any remotely similar allocation of hours.

Finally, Defendants suggest that, to the extent Plaintiffs were able to persuade the Court of their entitlement to any upward adjustment of the Court's generous fee award, that entitlement should be considered against the Court's even more generous (and largely unexplained) award of costs, the bulk of which pertain to the unsuccessful Pay-to-Play phase of the litigation.  As detailed in Defendants' prior memorandum, these expense items include numerous Federal Express mailings of deposition transcripts between Plaintiffs' counsel and their clients, and a host other expenses during the same period for which Plaintiffs were non-prevailing, that, though entirely unexplained by the Plaintiffs, were awarded in full by this Court.[5]  As a result, any upward adjustment sought by Plaintiffs should be deemed more than offset by these contrary considerations.

---

[5] A fuller discussion of the impropriety of Plaintiffs' claimed costs for legal research, faxes, travel, telephone charges, Federal Express charges, and other costs incurred during the Pay-to-Play phase of the litigation is set forth in Defs' Mem. at 18-22.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Plaintiffs'
motion for reconsideration of this Court's fee award be denied in its entirety, together with such
other relief as this Court deems appropriate.

Dated:          New York, New York
                August 21, 2014

                                        ZACHARY W. CARTER
                                        Corporation Counsel of the
                                         City of New York
                                        Attorney for Defendants
                                        New York City Law Department
                                        100 Church Street, Rm. 2-178
                                        New York, New York  10007
                                        Tel.:  212-356-0280


                                _____/s/_____
                                        JONATHAN PINES
                                        Assistant Corporation Counsel